Russell S. Thompson, IV (029098)
Jose F. Gill (028518)
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com
jgill@ThompsonConsumerLaw.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sean Dorr and Courtney Dorr,<br><br>Plaintiffs,<br><br>vs.<br><br>Capital One Auto Finance, Inc. and The Camping Companies, Inc.,<br><br>Defendants. | Case No.<br><br>**COMPLAINT AND TRIAL BY JURY DEMAND** |

## NATURE OF ACTION

1.   Plaintiffs Sean and Courtney Dorr ("Plaintiffs") bring this action against Defendants Capital One Auto Finance, Inc. ("Capital One"), and The Camping Companies, Inc. ("TCC") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Arizona common law.

## JURISDICTION, VENUE, AND STANDING

2.   This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiffs' action occurred in this district, where Plaintiffs reside in this district, and where Defendants transact business in this district.

4.      "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992).

5.      "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (quoting 15 U.S.C. § 1692(b)).  Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. *See id.* at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA."); *see also Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

6. "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition." *Lane*, 2016 WL 3671467 at *4 (emphasis in original).

## THE FAIR DEBT COLLECTION PRACTICES ACT

7. Congress enacted the FDCPA in order to eliminate "abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1179-80 (9th Cir. 2006) (citing 15 U.S.C. § 1692(e)).

8. To protect consumers and ensure compliance by debt collectors, "the FDCPA is a strict liability statute." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

9. Strict liability enhances "the remedial nature of the statute," and courts are "to interpret it liberally" to protect consumers. *Clark*, 460 F.3d at 1176.

10. In addition, by making available to prevailing consumers both statutory damages and attorneys' fees, Congress "clearly intended that private enforcement actions would be the primary enforcement tool of the Act." *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780-81 (9th Cir. 1982); *see also Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1118 (9th Cir. 2014).

11. Violations of the FDCPA are assessed under the least sophisticated consumer standard which is "'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naïve,' particularly

when those individuals are targeted by debt collectors." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (quoting *Duffy v. Landberg*, 215 F.3d 871, 874-75 (8th Cir. 2000)).

12. "An FDCPA Plaintiff need not even have actually been misled or deceived by the debt collector's representation; instead, liability depends on whether the *hypothetical* 'least sophisticated debtor' likely would be misled." *Tourgeman*, 755 F.3d at 1117-18 (emphasis in original).

13. "[B]ecause the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors—repeat players likely to be acquainted with the legal standards governing their industry—to bear the brunt of the risk." *Clark*, 460 F.3d at 1171-72; *see also FTC v. Colgate–Palmolive Co.,* 380 U.S. 374, 393 (1965) ("[I]t does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.") (internal quotations omitted).

**TRESPASS TO CHATTEL UNDER ARIZONA COMMON LAW**

14. The tort of trespass to a chattel may be committed by intentionally dispossessing another of a chattel or using or intermeddling with a chattel in the possession of another. *Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 330–31, 762 P.2d 609, 617–18 (Ct. App. 1988) (citing *Restatement (Second) of Torts* § 217 (1965)).

15. "Dispossession" is defined as the intentional taking of a chattel from the possession of another without the other's consent, or the intentional barring of a

Complaint - 4

possessor's access to a chattel. *Koepnick*, 158 Ariz. At 331 (citing The *Restatement (Second) of Torts* § 221 (1965)).

16. One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if, (1) he dispossesses the other of the chattel, (2) the chattel is impaired as to its condition, quality, or value, (3) the possessor is deprived of the use of the chattel for a substantial time or (4) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest. *Koepnick*, 158 Ariz. At 331 (citing The *Restatement (Second) of Torts* § 221 (1965) Comment B).

**NEGLIGENCE UNDER ARIZONA COMMON LAW**

17. Under Arizona law, negligence has four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Sanders v. Alger*, 242 Ariz. 246, 248, 394 P.3d 1083, 1085 (2017); *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 9, 150 P.3d 228 (2007).

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

18. The Restatement of Torts recognizes that conduct which is extreme and outrageous may cause severe emotional distress for which one may be subject to liability. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987) (citing Restatement (Second) of Torts § 46(1) (1965)).

19. Liability attaches for intentional infliction of emotion distress when conduct "has been so outrageous in character, and so extreme in degree, as to go beyond

all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community . . . in which . . . an average member of the community would . . . exclaim, 'Outrageous!' " *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987) (quoting Restatement (Second) of Torts § 46 comment d).

20. The elements of intentional infliction of emotional distress are: first, the conduct by the defendant must be "extreme" and "outrageous"; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987); *Watts v. Golden Age Nursing Home*, 127 Ariz. 255, 257, 619 P.2d 1032, 1035 (1980); *Accord Lucchesi v. Stimmel,* 149 Ariz. 76, 78-9, 716 P.2d 1013, 1015-16 (1986).

**PARTIES**

21. Plaintiffs are natural persons who at all relevant times resided in the State of Arizona, County of Maricopa, and City of Phoenix.

22. Plaintiffs are natural persons allegedly obligated to pay a debt asserted to be owed or due defendant Capital One.

23. Plaintiffs are "consumers" as defined by 15 U.S.C. § 1692a(3).

24. Defendant, Capital One, is an automobile finance company that regularly takes assignment of consumer debts.

Complaint - 6

Case 2:18-cv-02075-SPL   Document 1   Filed 07/02/18   Page 7 of 20

25. Defendant, TCC of Phoenix, Inc. ("TCC") is an Arizona Corporation, that at all relevant times, was acting as a repossession agent working at the behest of Capital One.

26. TCC is an entity using instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

27. TCC is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

**FACTUAL ALLEGATIONS**

28. On March 28, 2015, Plaintiffs purchased a 2015 Acura MDX (the "Vehicle") from nonparty, Acura of Peoria.

29. Plaintiffs purchased the Vehicle for their own personal, family and household use.

30. When Plaintiffs purchased the Vehicle, they did so on credit, and executed a Retail Installment Sales Contract (the "RISC") in favor of Acura of Peoria.

31. A true and correct copy of the RISC is attached to this complaint as Exhibit A.

32. Thereafter, the RISC was assigned to Capital One.

33. Shortly after entering into the RISC, on or about July 9, 2015, Plaintiffs satisfied their debt on the vehicle in full. *See* Paid in full letter from Capital One attached to this complaint as Exhibit B.

34. Thereafter, on March 5, 2018, Capital One engaged TCC, its repossession agent, to repossess a 2015 Acrua MDX (VIN #: 5FRYD4H49FB007267) belonging to

one "Rahel T. Worku" located at 9504 Lawnsberry Terrace in Silver Springs, Maryland. *See* TCC's Order to Repossess attached hereto as Exhibit C.

35. While Worku's vehicle was located in Silver Springs, MD, Capital One provided TCC Plaintiffs' address (12824 N. 140th Drive, Surprise, Arizona 85379) as the pickup address for Worku's vehicle. *Id.*

36. On or about March 6, 2018, TCC's employee went to Plaintiffs' home to repossess their vehicle.

37. When TCC's employee arrived at Plaintiffs' home, he observed Plaintiffs' 2015 Acura MDX and believed it to be the vehicle he was sent to repossess.

38. Before taking Plaintiffs' vehicle, TCC's employee did not verify the entire VIN of Plaintiff's vehicle.

39. If TCC's employee had checked the VIN, he would have realized that the VIN for Plaintiffs' Acura MDX did not match the VIN of the vehicle he was sent to repossess.

40. Thereafter, TCC's employee, while acting in the course and scope of his employment at TCC, took possession of Plaintiffs' vehicle.

41. At the time TCC's employee took possession of Plaintiffs' vehicle, he had no legal authority to do so.

42. At the time TCC's employee took possession of Plaintiffs' vehicle, TCC had no legal authority to direct its employee to do so.

43. At the time TCC's employee took possession of Plaintiffs' vehicle, Capital One, had no legal authority to engage TCC do so.

44. Later that morning, Plaintiffs discovered that their vehicle was missing and panicked.

45. Because they had already paid off the Vehicle, they assumed it had been stolen and contacted the Surprise Police department to report the theft.

46. The Surprise Police department advised Plaintiffs that TCC had notified the department that it would be repossessing Plaintiffs vehicle, and explained to Plaintiffs that their vehicle had been repossessed.

47. Plaintiffs notified the Surprise Police department that their vehicle had been paid off, and demanded that the department send an officer to take a report.

48. Plaintiffs then contacted TCC using contact information provided to them by the Surprise Police department.

49. TCC advised that it had been engaged to repossess Plaintiff's vehicle by Capital One. However, during the conversation with Plaintiffs TCC came to realize that Plaintiff's vehicle was not the vehicle they had been engaged to repossess, and discovered that the VINs for the vehicles did not match.

50. TCC advised Plaintiffs that it only checked the last six digits of the VIN, as opposed to verifying the entire VIN before taking possession of a vehicle.

51. Plaintiffs demanded that TCC return their vehicle, and TCC refused to do so.

52. Eventually, after several hours, and multiple calls, TCC relented and returned Plaintiff's vehicle.

53. Plaintiff, Courtney Dorr, is a prominent real estate agent.

54. The day her vehicle was taken, she had business appointments set, that would undoubtedly have resulted in commissions of several thousand dollars.

55. As a result of Defendants taking Plaintiffs' vehicle, Ms. Dorr was forced to cancel her appointments that day.

56. As a result, Ms. Dorr lost approximately $6,500 is sales commissions.

57. Moreover both Plaintiffs suffered severe stress and aggravation as a result of Defendants' actions.

**COUNT I**
**VIOLATION OF 15 U.S.C. § 1692f(6)(A)**
**TCC**

58. Plaintiffs repeat and re-allege each factual allegation contained above

59. TCC had no legal authority to repossess Plaintiffs' vehicle or its contents.

60. Defendant violated 15 U.S.C. § 1692f(6)(A) by taking or threatening to take non-judicial action to effect dispossession or disablement of Plaintiffs' property where there was no present right to possession of the property claimed as collateral through an enforceable security interest.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a) Adjudging that TCC violated 15 U.S.C. § 1692f(6)(A);

b) Awarding Plaintiffs statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c) Awarding Plaintiffs actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding Plaintiffs reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e) Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

f) Awarding such other and further relief as the Court may deem proper.

**COUNT II**
**COMMON LAW TRESPASS TO CHATTEL**
**TCC**

61. Plaintiffs repeat and re-allege each factual allegation contained above.

62. TCC intentionally took possession of Plaintiffs' vehicle and its contents.

63. At the time TCC took possession of Plaintiffs' vehicle and its contents, Plaintiffs did not consent to TCC's possession of their vehicle or its contents.

64. TCC had no legal authority to take possession of Plaintiffs' vehicle or its contents.

65. By taking possession of Plaintiffs' vehicle and its contents, TCC "dispossessed" Plaintiffs of their vehicle and its contents.

66. As a result of TCC's dispossession, Plaintiffs were deprived of the use of their vehicle and its contents for a substantial time.

67. As a result of TCC's dispossession, Plaintiffs' vehicle was impaired as to its condition quality and value.

68. As a result of TCC's dispossession, Plaintiffs suffered fear, anxiety, and stress, as well as the expense and disutility associated with reporting the vehicle stolen, and taking the necessary steps to force TCC to return the vehicle.

69. Additionally, as a result of TCC's dispossession, Courtney Dorr was forced to cancel her sales appointments that day and lost commissions of approximately $6,500.

70. By intentionally dispossessing Plaintiffs of their vehicle and its contents without legal authority to do so, TCC committed trespass to chattel.

71. TCC's actions in taking Plaintiffs' vehicle without authority, and refusing to immediately return it, evidence that its conduct was guided by willful or wanton disregard of the interests of others.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a) Adjudging that TCC committed trespass to chattel with regard to Plaintiffs' vehicle and its contents;

b) Awarding Plaintiffs their actual damages in an amount to be proved at trial;

c) Awarding Plaintiffs punitive damages in an amount to be proved at trial

d) Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

e) Awarding such other and further relief as the Court may deem proper.

## COUNT III
## COMMON LAW TRESPASS TO CHATTEL
## CAPITAL ONE

72. Plaintiffs repeat and re-allege each factual allegation contained above.

73. Capital One intentionally took possession of Plaintiffs' vehicle and its contents through its agents, TCC.

74. At the time Capital One took possession of Plaintiffs' vehicle and its contents, Plaintiffs did not consent to Capital One's possession of their vehicle or its contents.

75. Capital One had no legal authority to take possession of Plaintiffs' vehicle or its contents.

76. By taking possession of Plaintiffs' vehicle and its contents, Capital One "dispossessed" Plaintiffs of their vehicle and its contents.

77. As a result of Capital One's dispossession, Plaintiffs were deprived of the use of their vehicle and its contents for a substantial time.

78. As a result of Capital One's dispossession, Plaintiffs' vehicle was impaired as to its condition quality and value.

79. As a result of Capital One's dispossession, Plaintiffs suffered fear, anxiety, and stress, as well as the expense and disutility associated with reporting the vehicle stolen and forcing TCC to return it.

80. Additionally, as a result of TCC's dispossession, Courtney Dorr was forced to cancel her sales appointments that day and lost commissions of approximately $6,500.

81. By intentionally dispossessing Plaintiffs of their vehicle and its contents without legal authority to do so, Capital One committed trespass to chattel.

82. Capital One's actions in hiring TCC to take Plaintiffs' vehicle and its contents without authority, and its false confirmation to TCC that the target vehicle be could be located at Plaintiffs' address—notwithstanding the fact that the actual target

vehicle was in Maryland—evidence that its conduct was guided by willful or wanton disregard of the interests of others.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a) Adjudging that Capital One committed trespass to chattel with regard to Plaintiffs' vehicle and its contents;

b) Awarding Plaintiffs their actual damages in an amount to be proved at trial;

c) Awarding Plaintiffs punitive damages in an amount to be proved at trial

d) Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

e) Awarding such other and further relief as the Court may deem proper.

## COUNT IV
## COMMON LAW NEGLIGNCE
## TCC

83. Plaintiffs repeat and re-allege each factual allegation contained above.

84. Before taking possession of a vehicle, a reasonably prudent repossession company would verify the VIN of the target vehicle to ensure that the vehicle being taken is the correct vehicle.

85. Before TCC took possession of Plaintiffs' vehicle, it did not verify that the VIN of Plaintiff's vehicle matched the VIN of the target vehicle. Instead, it only checked the last six digits of the VIN.

86. By failing to verify that Plaintiff's vehicle's VIN matched the VIN of the target vehicle, before taking Plaintiff's vehicle, TCC acted negligently.

Complaint - 14

87. As a proximate cause of TCC's negligence, Plaintiffs' vehicle and its contents were taken without their authority, and Courtney Dorr was forced to cancel her sales appointments scheduled for that day, which caused her to lose approximately $6,500 in sales commissions.

88. Instead of verifying the entire VIN of the vehicles it repossesses, TCC's standard practice is to only check the last six digits of target vehicles' VINs before taking them.

89. TCC's policy of only verifying only the last six digits of the VIN for the vehicles it repossesses wantonly disregards the interests of others, as it needlessly increases the risk that TCC will take an innocent consumer's vehicle without authority.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a) Adjudging that TCC acted negligently;

b) Awarding Plaintiffs their actual damages in an amount to be proved at trial;

c) Awarding Plaintiffs punitive damages in an amount to be proved at trial

d) Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

e) Awarding such other and further relief as the Court may deem proper.

## COUNT V
## COMMON LAW NEGLIGNCE
## CAPITAL ONE

90. Plaintiffs repeat and re-allege each factual allegation contained above.

91. Before directing a repossession agent to a specific address to repossess a vehicle, a reasonably prudent finance company would verify that the address provided matched the account in question.

92. Capital One dispatched its repossession agent, TCC, to take possession of a vehicle matching Plaintiffs' vehicle's description and told TCC that the vehicle could be located at Plaintiffs' address—notwithstanding the fact that the actual target vehicle was in Maryland, and that the address on the account was in Maryland.

93. By directing TCC to repossess a vehicle matching the description of Plaintiffs' vehicle, at Plaintiffs' address—notwithstanding the fact that the address on the account at issue was in Maryland—Capital One acted negligently.

94. As a proximate cause of Capital One's negligence, Plaintiffs' vehicle and its contents were taken without their authority, and Courtney Dorr was forced to cancel her sales appointments scheduled for that day, which caused her to lose approximately $6,500 in sales commissions.

95. Capital One's actions in hiring TCC to take Plaintiffs' vehicle and its contents without authority, its false confirmation to TCC's that the target vehicle could be located at Plaintiffs' address evidence that Capital One's conduct was guided by willful or wanton disregard of the interests of others.

96.     Additionally, under Arizona law, creditors are vicariously liable for the actions of their repossession agents. *See Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, 433–34, 167 P.3d 111, 120–21 (Ct. App. 2007).

97.     Capital One hired TCC to act as its repossession agent. *See* Exhibit C.

98.     Thus, Capital One is liable for TCC's negligent conduct described in Count IV above.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a) Adjudging that Capital One acted negligently;

b) Adjudging that TCC acted negligently;

c) Adjudging that Capital One, as the creditor that hired TCC, is liable for TCC's negligence;

d) Awarding Plaintiffs their actual damages in an amount to be proved at trial;

e) Awarding Plaintiffs punitive damages in an amount to be proved at trial

f) Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

g) Awarding such other and further relief as the Court may deem proper.

### COUNT VI
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### TCC

99.     Plaintiffs repeat and re-allege each factual allegation contained above.

100.    TCC had no right take Plaintiffs' vehicle, nonetheless it took Plaintiffs' vehicle and refused to deliver it back to them until they involved the police.

101. By taking Plaintiffs' vehicle without authority, and subsequently refusing to immediately return it, TCC acted outrageously, atrociously, and in a manner intolerable in a civilized community.

102. In fact, TCC's actions constitute "theft" under the laws of Arizona.

103. By failing to check the complete VIN of Plaintiffs' vehicle before taking it, TCC recklessly disregarded the possibility that would take the vehicle of an innocent consumer, and the consequences for doing so.

104. It is a near certainty that innocent consumers, upon finding their vehicle taken without reason, would suffer severe emotional distress.

105. Thus, TCC recklessly disregarded the near certain severe emotional distress that its conduct would cause.

106. As a proximate cause of TCC's actions, Plaintiffs suffered severe emotional distress.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a) Adjudging that TCC intentionally inflicted emotional distress on Plaintiffs;

b) Awarding Plaintiffs their actual damages in an amount to be proved at trial;

c) Awarding Plaintiffs punitive damages in an amount to be proved at trial

d) Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

e) Awarding such other and further relief as the Court may deem proper.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## CAPITAL ONE

107. Plaintiffs repeat and re-allege each factual allegation contained above.

108. Under Arizona law, creditors are vicariously liable for the actions of their repossession agents. *See Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, 433–34, 167 P.3d 111, 120–21 (Ct. App. 2007).

109. Capital One hired TCC to act as its repossession agent. *See* Exhibit C.

110. Thus, Capital One is liable for TCC's intentional infliction of emotional distress described in Count VI above.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a) Adjudging that TCC intentionally inflicted emotion distress on Plaintiffs;

b) Adjudging that Capital One, as the creditor that hired TCC, is liable for TCC's negligence;

c) Awarding Plaintiffs their actual damages in an amount to be proved at trial;

d) Awarding Plaintiffs punitive damages in an amount to be proved at trial

e) Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

f) Awarding such other and further relief as the Court may deem proper.

## TRIAL BY JURY

111. Plaintiffs are entitled to and hereby demand a trial by jury.

Dated: July 2, 2018

Respectfully submitted,

<u>s/ Russell S. Thompson, IV</u>
Russell S. Thompson, IV (029098)
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com

<u>s/ Jose F. Gill</u>
Jose F. Gill (028518)
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8836
Facsimile: (866) 317-2674
jgill@ThompsonConsumerLaw.com
Attorneys for Plaintiff